And we'll next hear an argument in Hohlbein. Good morning. May it please the Court, Jason Singleton appearing for Appellant Jeff Hohlbein. The District Court had initially found a contested issue of fact when it first ruled on defendant's motion for summary judgment and concluded that plaintiff did, in fact, have standing. Nonetheless, the Court on its own motion three days before trial reconsidered the summary judgment and concluded that, in fact, there was not a contested issue of fact and the plaintiff did not have standing, primarily based upon the bare allegation of 12 other ADA lawsuits, five of which predated the subject suit and seven after. And the primary problem I have with what the District Court did is he didn't provide an opportunity to look at the underlying merits of the other 12 suits. I mean, just the fact that Mr. Hohlbein had filed those suits does not in and of itself in any way have any bearing in my mind as to whether or not he had an intent to return or his credibility. As Judge Carlson said in the Eastern District, the fact that plaintiff is fulfilling the Congressional purpose when it provided for private enforcement of the ADA is hardly evidence of bad faith. I mean, first off, I didn't have the opportunity to show that Mr. Hohlbein had wrote letters prior to filing these other suits, that they were close to his house, that we did actually get injunctive relief, all of these things. And those are factors that would have weighed, I think, in on the Court's decision to find that there was no standing. Let me ask you a question. Certainly, Your Honor. On that. The bringing of lawsuits might, of other lawsuits, a lot of them, might shed light on the credibility of his assertion of intention to return. That is, perhaps an argument could be made that instead of doing this for the sake of serious intent to come back to Carson City and stay at Horton House, that is really for the sake of pursuing litigation for whatever reason. Even if that's true, however, my question is, can that, in your view, be resolved on summary judgment, or is that a matter that should be reserved for a trial? That was the other second point I was going to make later, Your Honor. I mean, it goes without saying that a district court is not to be weighing facts on summary judgment. What does it really prove, in any event, how many lawsuits there are? It goes to credibility. And credibility necessarily cannot be weighed on summary judgment. So I would — the point I would make, Your Honor, is that those kinds of facts, if they're going to be brought up at all, should be brought up at trial, not on a summary judgment stage. There is a pretty well-written opinion out of the Southern District where the number of lawsuits did come up, and it wasn't an evidentiary hearing at trial. I think it was a bench trial. And I thought that judge did a very good job. And it was tied into redressability, not actual injury. And I think that would be the appropriate place to address it, not on a summary judgment. The other point that I brought up with the district court that just fell on deaf ears, Mr. Holbein wrote two letters, or actually Mr. Kilby, on Mr. Holbein's behalf prior to filing suit. Mr. Holbein tried to get access without filing suit, and I think that bears directly on the question of whether, you know, he was looking for a target or he was looking for access. I don't know how it can be said that he was just looking for a target to sue when he tried to avoid litigation to begin with. The overall concern I have, and the district courts are all over the place on this, as you know, is that if we're going to tie and define the contours of standing with how many lawsuits a person has filed without looking at the underlying merits of those lawsuits, it's going to take standing, the definition of standing, well beyond what the court intended when it penned Lou John. I don't know where the courts are going to draw the line. I mean, is it three lawsuits? Is it five lawsuits? Is it ten lawsuits? Are we going to look at the merits? We're not going to look at the merits. We're going to look at what kind of facility it is. Is it Disney World or is it a hotel in Carson City, Nevada? The district courts and this court may be writing opinions defining the contours of standing for the next ten years. And I don't know the answer, honestly. This Court is much more better equipped to answer those questions than I am. I just have a real fundamental conceptual problem with trying to define the scope of standing based upon how many lawsuits a person has filed. Kennedy. What about the record of intent to return separate and apart from the number of lawsuits? There's a debate between you and your opponent about whether it was a credible or a manufactured intent. Yes, Your Honor. Mr. Holbein had a family cabin in the Tahoe City area and had been there some 50 times and had been to Carson City some ten times. It's not uncommon for people to visit their old neighborhoods or their old stomping grounds. I mean, the mere fact that he went back there to begin with for the incident that generated this lawsuit is itself indicative that he had an intent to return to his old stomping grounds. I would point out that these were family reunions that he was having in Tahoe City and in the surrounding area. And it's somewhat in his deposition testimony, but not entirely. But these are good memories for him. This is a time when his family was together. This was when he was a kid before he became disabled. This is an area and a time period that holds good memories for him. And consequently, it's not unlikely that he would return. And I think that can be inferred in his declaration and deposition testimony where he said he was going to return. And, in fact, he did. Let me just focus in on that just a bit, because the complaint, which was filed in October 2002, does not allege that Holbein would or could or will return to Carson City or to Hardman House. All it alleges, I think, is that he is deterred from Hardman House. In his deposition, which was taken in September of 2003, he simply says he probably would go to Carson City in May of 2004. And his declaration, which was filed in January of 2004, states that he fully intends to do a scouting trip around the Carson City area when the weather clears, and that he made a reservation at Motel 6 for May and for August. Now, here's my question. The latter, I mean, the latter, there's, it could be argued that there, this doesn't show, as of the time the complaint was filed, an intent to return to Carson City or to Hardman House. And so what's your response to that? Certainly, Your Honor. First off, it was never brought up on a motion to dismiss. So we never, you know, the complaint is, as with most complaints, a short and plain statement giving rise to the question. Well, it's a summary judgment. Yes, but on summary judgment, these issues were raised and we addressed them. Well, no, but the focus of my question, and this is somewhat important, is on whether every, I think that's all that's adduced on the summary judgment record, in your favor, I mean, the three things I mentioned to you. I don't think there's anything more. I mean, it was his, the complaint, his declaration and his deposition. I think what you're arguing, though, is that as far as the complaint alone goes, there was no motion to dismiss for failure to plead the elements. Yeah, but that's not, that's not my point. My point is that as of the time of the summary judgment proceeding, you had those three things before the court. And none of the substantive stuff, that is, his declaration or his deposition talking about returning, speaks as of the time of the complaint. And I just wanted your response to that. I actually do understand the Court's question. I've been thinking about that myself now for several days. First off, opposing counsel never specifically asked Mr. Holbein during his deposition, what was your intent as of filing the complaint? That's correct. I mean, that is the whole. Right. So we don't, he never had an opportunity to say, and it's generally my practice not to ask my own client questions at a deposition. I think, again, it's clear in his declaration that he says, it's my intent to return. And I think the Court can infer, because of his familial relationship with the area and the fact that he went there to begin with, that there is an intent to return. He said there was an intent to return in his declaration and deposition. He's got longstanding contacts with the area. And he went there to begin with, which was the genesis of this lawsuit. I mean, taking all those facts together, I think you can infer that he had an intent to return as of the time of the filing of the complaint. If I knew that when we opposed the motion for summary judgment initially, we put what material we thought was necessary to oppose the motion and prevail. I didn't know that I would be later before the Ninth Circuit Court of Appeal answering pointed questions from the Court. I did want to reserve some time for rebuttal, and I'm not sure where we're at with that. Sure. You have nine and a half minutes. Okay. Thank you, Your Honor. The clock does record your actual time. I think you've hit the heart of your position. I think your responses have been helpful on it. You might want to. Yeah. I just wanted to, again, I don't know how the Court feels about this, but we were not provided the opportunity to present any evidences to the merits of the underlying lawsuits on which the district court then, and I just thought that was. I understand that. Okay. I'll go ahead and reserve the rest of the time for rebuttal. Thank you. Mr. Bick. Thank you, Your Honor. May it please the Court, under the facts of this case and under the law that applies, Mr. Bick. I am, Your Honor. Under the facts of this case, under the law that applies, District Court Judge Howard McKibbin properly ruled that the plaintiff in our case, Mr. Holbein, lacks standing to bring. Mr. Bick, I've got at least two sort of related but kind of different problems that I'd like to hear your response to. The first being that, as I understand it, I don't have any quarrel with the fact that the district judge had the power to reconsider his prior ruling. So let's just put that off the table for purposes of my question. My problem is that in reconsidering his ruling, he relied on, quote, evidence, end of quote, of prior litigation and evidence, end quotes, that he made his reservation at the Motel 6 on the day of his deposition or declaration and canceled the reservation the day after the district court's original and favorable ruling. Now, as I see it, there's no that, quote, evidence, end of quote, is not under oath. And so as I look at the record, there's just simply no support for saying that there's new evidence sufficient to warrant relooking at the prior ruling. So that's the first question. And the second one I've got is this, and it's kind of related, and that is even if you assume that the litigation as such is something that somebody could take judicial notice of, of course, it wasn't asked to have happen and it wasn't taken, but even if you assume it, don't both the cancellation occurs after the complaint is filed? And so assume with me for a moment that you could infer from both of those things that his articulated intent to return is doubtful. Isn't that something that you necessarily have to resolve after a trial rather than on summary judgment? And I would disagree that it has to be. We need to keep in mind there's two different reasons why the district court judge could have dismissed this case for lack of jurisdiction. You hit upon one of those in your questioning to Mr. Holbein's attorney a few minutes ago. Is there any evidence in this record at all to indicate as of the date Mr. Holbein filed the complaint on October 18, 2002, did he intend to return? Sure, possibly. We can get to that later, but the point, but that's not what he actually did. Sure. And this Court can affirm district court's ruling on any grounds supported by the record. What you're pointing to now is the second basis that it could be affirmed, and that is if, in fact, we were to assume that there was some evidence in this record that Mr. Holbein intended to return as of October 18, 2002, the question becomes what is the role of the court in deciding whether or not there is sufficient evidence to warrant jurisdiction. That decision is strictly a question of law. Standing is a question of law, and it's the function of the court to determine if it has standing to hear the case. And as this Court has indicated before, the district court can hear evidence, can resolve. Oh, no, it can't. How does it hear the evidence? Well, I think that goes to the first question that was presented by Her Honor, and that is, was the evidence presented in a proper form on a summary judgment? And that goes to the issue of, number one, did the plaintiff even object to the evidence being presented, which they didn't, and therefore they waived it? I mean, there's no evidence. That's my point. Well, as I understand this Court's previous decisions, the focus is not on the admissibility of the form, but on the admissibility of the contents. If what is being represented could be presented to the court. Kagan, you're surely not going to take the position that if you just go into a district court and toss something on the table, that that provides a basis for summary judgment. It has to be a statement under oath by somebody who's competent. I'm not talking about whether the form of it is admissible. I'm talking about whether there is any admissible, any even arguably admissible evidence. And all I can say in response to that is that both sides told the judge what the number of those lawsuits were. Okay. It wasn't even a disputed issue at that point. The plaintiff's attorney even conceded his client had filed that number of lawsuits. That also goes to the next question, does that even make a difference in determining whether summary judgment was appropriate in this case? And that goes back to the initial issue. And that is, is there any evidence in this record that would show that as of the date he filed the complaint on October 18, 2002, he intended to return to Carson City, Nevada? And if he did return, would he have the need for the use of a hotel such as the Hardman House? We have no record, no evidence in this record before this court to indicate that is the case. What we have is what the plaintiff said at his deposition, and we have what he said in the declaration on January 30, 2004. And what you also have is Pickern, in which this court said that it's sufficient for standing purposes that a disabled individual is deterred from going someplace on account of lack of access. And I realize, Judge And that's what the complaint did, in fact, to Ledge, was that Holbein was deterred from going to Hardman House. So isn't that enough under Pickern? Pickern? Pickern v. Holiday Quality Foods, Incorporated. And I would disagree. And I realize Judge Thompson was one of the judges that actually sat on the panel that decided that case. But let's look at what the holding in that case was and what the facts in that case were, because they're completely different from what we have in this particular case. In the Pickern decision, this court specifically said that a single exposure to past illegal conduct, that being architectural barriers to access, can be sufficient to establish standing, providing that the plaintiff is currently deterred from reusing those facilities. In other words, the court recognized the feudal gesture doctrine, and that is you don't have to engage in the feudal gesture of going back. If you know barriers exist. Which did not have to do with standing. On the standing inquiry, you said deterred. That's, I mean. Sure. But it's currently deterred, is what the words were in the decision. So what you have to have is you have to have exposure to that past illegal conduct, and that exposure currently deters. In other words, but for the existence of that barrier, I would, in fact, return. My intent is to return, but for the existence of this deterrent. And in the facts of the Pickern case, the court even specifically noted that the gentleman in question, who lives 70 miles away, would tend to visit his grandmother at least once a week, every Sunday. He was in the town on a regular basis. He used that particular grocery store in his own hometown. Said he would use it in his grandmother's town if it was available. And in fact, just prior to the lawsuit being filed, the facts indicated he was actually in the parking lot of that particular grocery store, and would have used that store if it had been available. We don't have that situation in this particular case. So what Pickering stands for is that you don't have to go back in if you know it would be futile, but you still have to have that intent. You have to be currently deterred. If you have no intent to use it, you're not currently deterred. So I'm just trying to understand how this record evolved. There's a complaint that does not have specificity as to intent as of the pleading. Then discovery occurs, and then summary judgment ensues. What are we looking at? The complaint or everything that was in the record, and then we assess whether or not that relates back to intent as of the time it was filed, or that it's only post-filing, and therefore it doesn't make any difference what he does? I'm not sure I understand where it goes. I believe you've made two different points. I believe this Court has the right, if not the obligation, to look at the entire record that is presented. The question becomes what portions of that record you can consider. Obviously, standing has to be considered as of the date the complaint is filed. Standing cannot be created after the fact. A subsequent declared intent at a later point in time or subsequent actions cannot be considered to create standing. So when you look at a statement made in a deposition, as of that point in time, that deposition was more than 11 months after the complaint was filed. A declaration that was filed in January of 2004 is approximately 14 to 15 months afterwards. But you have to have to have. But would it be okay if he had said in his declaration or at his deposition, you know, I filed the complaint, I intended to come back in May and August? That would have been the easiest thing the plaintiff's attorneys could have done in this case. They could have filed it. That would have been okay, right? If, in fact, that was the truth. But it wasn't done. But that would have been okay. So the fact that he just says, when asked, what's your, do you intend to go back, and he says, yeah. I mean, it doesn't cut one way or another. I mean, nobody said, is that your intent now? Did you have that intent then? No one specifically said, is that your intent now? Was that your intent then? The question was, as of the date of the deposition, do you plan to return to Carson City? Any intent he may have had, probably return without any concrete plans, no reservations, was as of that date. If the plaintiff had attached an affidavit saying, as of the date of filing my complaint, I had an intent to return to Carson City and would have if it had been accessible to go back to the Hardman House, that would be a different situation. They didn't submit it. Do I have any, I mean, one of the problems here is a lot of these cases are neighborhood cases, you know, theater, shopping center. Here we're talking about something that is inherently episodic, okay? And it's not going, it's not environmentalists going all the way down to a foreign country where it may be remote that they would do it. But here we have, as a pragmatic matter, the hotel travel industry involved. Now, I don't know, do you have plans to go to Kansas City? You were there last year, had a good enough time, but it's not the highest thing on your list to return to Kansas City in the next four or five years. But you sure would like to go back sometime in the future. They have very good barbecue. They do, I know. You're talking about Kansas City. Do I intend to go to Kansas City? But my point is that in the nature of the facility, this is not something that the plaintiff would necessarily have a current, you know, everyday intent, but it certainly was a logical destination. And as counsel has argued, in the facts of this case, this was not just a one-time drop-in visit to the area. This is an area where he had connections to and a logic. So what, as looking at, on a summary judgment, taking the facts most favorable to the plaintiff, should we be doing? You seem to be arguing that his case failed from the outset. He didn't move to dismiss. There was no opportunity to amend the complaint, if that were the posture of it. You're saying you look at the evidence now on a summary judgment, and what we wind up doing is weighing, as it seems to me, credibility of the evidence. And we may not even get to the evidence for some, as Judge Reimer said, with respect to some of it, but that's the problem I have with this. And to do it in the form of standing, as counsel said at the outset, and I'd be interested in your reaction to it, you're putting us in the position of now drawing a whole lot of lines as to what constitutes enough in the category of standing which doesn't have any evidentiary hearing component to it. And again, to complete the picture, they may have said they were going to agree there were seven lawsuits, but I don't know whether the seven lawsuits, what if the seven lawsuits were in California, where this gentleman likes to drive his van and he's repeatedly been denied access because the nature of the cities that he visits inherently don't have facilities that have the ADA-compliant aspects to them. Initially, both counsels said it was 12 lawsuits. But you've raised a number of different issues, and it's hard to answer with just one or two sentences, but I'm not going to get away with asking compound questions. I have to live with the answer. So let me address it this way, if I may. There's two different issues on this appeal that I see this Court can affirm the order granting summary judgment. Number one, is there any evidence in the record to show as of the date of the complaint, October 18, 2002, the plaintiff intended to return? There isn't. Two of these supplemental cases I cited to you, one from the Southern District of California, Wilson v. Costco, the other one from the Central District, Dalil v. Best Western Encina Lodge, both address that specific issue, saying, you as the plaintiff, you referred to the wrong time frame. You're telling me about your intent at a subsequent time. You haven't told me what your intent was at the date of the complaint. They dismiss the complaint. But even if we were to assume, and I would respectfully disagree that the plaintiff has enough contacts with this area to indicate any intent to return, what wasn't mentioned by the plaintiff's attorney when he talked about this family cabin at Tahoe City, and if you're not familiar, Tahoe City is on the California side of Lake Tahoe. It's about 40 miles from Carson City. What the plaintiff said in his deposition was his best guess, quote, unquote, was that he had been there maybe 50 times. In the next breath, he went on to say, but I hardly ever went up there unless there was a family reunion or some kind of a family gathering. His family sold that cabin as of 1997 or 1998. He hasn't been back to that cabin since that time. And in fact, he couldn't remember the last time he had been to that cabin prior to 1997 or 1998. Furthermore, he said that he had been in Carson City a total of maybe 10 times in his life, starting in 1965 when he was 7 years of age. So from 1965 through 2002, 37-year span, he'd been there maybe 10 times. Could not remember the last time he had been in Carson City prior to 2002. Had definitely never stayed in a hotel or motel in Carson City prior to 2002. And had never even heard of the Hardman House prior to 2002. So his contacts are very slight. But even if we were to assume that there was some evidence in this record to show what his intent was as of the date he filed his complaint, now we come to the next issue that Judge Reimer presented. How can the district court judge rule on this? Isn't this a question of fact? How can you do it on a summary judgment? And I would respectfully submit the court can. In fact, any number of district courts in this circuit have done so already, which I've cited to this court. The issue of standing is a question of law. It's for the court to decide. It's up to the court to look at the evidence, and we'll get back to the issue of prior lawsuits in a second, to look at the evidence, to weigh the evidence, and to resolve any factual disputes that may exist, providing the jurisdictional issue is separable from the merits of the case, which it is in this case. The jurisdictional issue is, did he intend to return? The merits of the case pertain to, were there or are there any ongoing barriers to access that need to be remedied? So the district court judge has the duty to determine if, in fact, he has jurisdiction. He has the duty to look at whether or not that statement of intent to return is sincere based upon the factual circumstances. That's going to be an issue for the judge to decide. The cases I've cited to this court, the courts have looked at a number of different factors and have ruled as a matter of law in granting summary judgment a certain individual does not have standing. Now, I know this circuit court has not specifically said that, and I'm not aware of any This whole ADA litigation is something that has been exploding in the last four or five years, and it's created a lot of discussion and a lot of concern among the district courts, and perhaps we need some guides from this court as to what they're supposed to do. But these other courts have had no hesitation in granting summary judgment because that's an issue that I, as the judge, have to make that determination. And in this particular case, the district courts have looked at a number of different You don't have to make it on summary judgment. I agree with you. The judge has to make it. But there are also very good district judges who take them the opposite tack, and they say, look, I can't decide this issue on this record, and we'll try the case, and then I'll decide whether there's standing. And that's what Lujan directs. Actually, to go to just amplify on that, looking back at DeLille, Judge the other day, Judge Fischer, said because plaintiff must establish standing before the court can hear such a motion, the court issued its order to raise standing, requiring that the parties confer and set a date for an evidentiary hearing on the issue. Why isn't that the appropriate way to go? There are a number of DeLille cases, so I want to make sure we're talking about the same one. Well, it's DeLille v. West Western and Sina Lodge and Suites, United States District Court, January 12, 415 F. Sup. 1048. Actually, in that particular case, there was a stipulated judgment, and then the issue became one for attorney's fees. And the judge said, I have to decide if there's standing for you to even make a motion for attorney's fees. And the judge said that they did not have standing. It has no jurisdiction to proceed. But in addition to that, I'm looking at DeLille v. West Western, 415 F. Sup. 1048, and it was a motion for attorney's fees and costs that had been filed by the plaintiff's attorney following a stipulated judgment. And the court said, before I can even get to that issue, I have to see if I have standing to even proceed or if the plaintiff has standing so that I have jurisdiction. Right. The point was, though, that she was asking for an evidentiary hearing on it. And then by the same token, in Wilson v. Costco, they did grant summary judgment on those same factors. From the Southern District of California, in Harris v. Stonecrest Care Auto Center, also granted a motion for summary judgment. Different judges may feel they need different evidence. Other judges have looked at what's available, and they have granted summary judgment. There is no guidance from this Court as to a blanket rule that it can't be done as a matter of law. And I would respectfully submit that the Court can take the evidence presented to it and make its ruling, whether it's in the form of a summary judgment order or in the form of a finding of fact. In this particular case, Judge McKibbin said there's no standing. Based upon the various factors, the lack of contact, no indication of concrete plans to return, he specifically found, whether you call it a summary judgment or finding of fact, there was no jurisdiction. If this Court decides it wants to remand to tell him to have an evidentiary hearing, I'm sure he'll be happy to do so. Just simply reinstate his prior ruling, which was just that, exactly. I mean, his original instinct. He probably would. Well, I mean, his original instinct was, let this thing go to trial and then I'll make the decision. And then he changed his mind based upon litigation and the change in reservations. I can understand, bear significantly on the seriousness of the intent. But what I can't understand is how you can resolve that on summary judgment. That's the problem. That's the rub. And, again, many courts have, and this has been indicated, many judges say, I need further evidence. If there needs to be further guidance from this Court, so be it. But I would respectfully submit that is something that has been decided as a matter of law. But in any event, you still have to get over the initial hurdle. Was there any evidence as of the date the complaint was filed of an intent to return? The plaintiff never submitted any such evidence. So for that reason alone, the order should be affirmed. And I would thank you for your time. Okay. Thank you, Mr. Beck. And, Judge Fischer, I believe today is your birthday, and I just wanted to wish you a happy birthday. Oh, boy, is that points. You lose points. I was hoping it wouldn't be noted. Thank you very much. Thank you, Your Honor. Robert Kilby, appearing on behalf of Appellant Jeff Holbein. First, I wanted to address the issue brought up by Appellee's Counsel that the issues of jurisdiction and the relief sought are not necessarily intertwined, and, therefore, that the Court is free to weigh the evidence at any point. This issue was addressed in Organization for Advancement of Minorities with Disabilities v. Britt Gov in the Southern District of California, where the Court found that the issues are necessarily intertwined because the relief sought, e.g., removal of barriers to access, there's a nexus there between that and the injury, in fact, which experienced the barriers to access. So, in that regard, because the issues of jurisdiction and the relief sought are intertwined, the Court is not free to weigh evidence, particularly at this stage of the proceedings. As the Court noted in Pickern, the allegations on summary judgment must be accepted as true, and also in that case, which counsel attempts to distinguish as not being similar, I would argue that the cases are similar because there was a technical difference. So if you don't rely on the broad holding and you actually look to the record in Pickern, it shows that this guy shopped at that market where he lived, that he visited his mother, grandmother, either weekly or biweekly on a regular basis. There's that market. That's the market that he preferred to shop at always, and that's the place that he would have gone had he had access to it. I mean, there's none of that here. So I don't see that the cases are factually similar at all. So if that's what you're relying on, it seems to me you're in a little trouble. Well, I'm relying more on the broad holding, Your Honor, that he experienced the barriers to access. He indicated in his declaration that he's deterred from returning to the Hardman House because of those barriers to access. Yeah. It's just totally, totally without any substantiating evidence that he does it regularly or that he would go back there at any specific time? In regards to? I mean, anything. All he's done is just basically say, probably we'll go back to Carson City. Well, in his declaration, he had a specific indication that he would return. Yeah, which he promptly canceled. Well, right. Well, that. Which clearly shows that he made the reservation just to get past, just so he could say he was going to go back, and then he finds out he's got a favorable ruling and he pulls the plug. Well, I respectfully contend, Your Honor, that the reason why Mr. Holbein canceled his reservation was because counsel for the appellees contacted Motel 6, and Motel 6 violated his privacy rights by providing the information regarding the reservation. That being said, Your Honor, what happens after the initial filing of the complaint, I would respectfully contend is evidence or indicative of what the intent was. So in that regard. I can't believe that you're really saying that, because if that's true, then the canceling, the making and canceling of the reservations is directly relevant. Directly relevant to intent. To intent. Your position has to be that that's not, that that's not germane and that there's a reasonable inference which can be drawn in your favor. Right. Based upon your deposition and the declaration that as of the time he filed a complaint, he did intend to come back at least enough to get a trial on it. And he has returned, Your Honor. Again, so what? Okay. Well, in that regard, I'll just take the court on that. Just finally, Your Honor, in the cases cited by the defendants, most of them, such as these various Molsky cases or whatever that were dismissed by some of the district courts, there were either no concrete plans to return or the courts did examine the individual underlying cases. So, thank you. Okay. May I ask both counsel whether this case has gone through the mediation process? If we need to go through a court order to still accomplish that. Okay. So, there's no point in reiterating that wheel, I take it.
judges: Thompson, Rymer, Fisher